UNITED STATS DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Grand Jury Sworn In September 30, 2004
Holding A Criminal Term

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 06-050 |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| SHERMAN L. BERRY JR., | : | 18 U.S.C. § 1001 (False Statements) |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | : | 18 U.S.C. § 1920 (False Statements to |
| | : | Obtain Federal Employees' Compensation) |
| | : | 18 U.S.C. § 2 (Causing an Act to be Done) |

## INDICTMENT

The Grand Jury charges:

### COUNT ONE - FALSE STATEMENTS

At all times material herein:

### INTRODUCTION

The Defendant

1. From on or about May 3, 1987 to September 12, 1994, the defendant, SHERMAN L. BERRY, was employed by the United States Department of Treasury, Bureau of Engraving and Printing ("BEP") as a Packer in Washington, D.C.

2. On or about November 6, 1991, the defendant, SHERMAN L. BERRY, cut his toe in a work-related accident. The defendant, SHERMAN L. BERRY, received two stitches in his toe and was advised by medical personnel to resume work eight days later.

3. On or about March 2, 1992, the defendant submitted a claim to the Office of Workers'

Compensation Programs of the United States Department of Labor ("OWCP") seeking compensation on the ground that, as a result of the above-mentioned work-related accident, he was suffering from a traumatic injury to his left toe that left him disabled and unemployable.

### OWCP

4. OWCP was in charge of administering a program that paid monetary compensation to federal employees who were disabled as a result of their employment and could not work. The Federal Employees' Compensation Act ("FECA") provided such compensation for lost wages and reimbursement for any medical expenses to federal employees until they could resume gainful employment. OWCP was responsible for determining eligibility for FECA compensation ("worker's compensation").

5. The largest longterm costs in this program were for worker's compensation paid to claimants. These claimants received worker's compensation equivalent up to 75% of their normal salary, tax free. These claimants were considered to be disabled and technically unable to work at any job.

6. OWCP entitled the claimant to select any licensed medical provider for treatment of the injury involved in the worker's compensation claim. To receive worker's compensation, a claimant was required by law to establish a disability with specified medical paperwork signed by a licensed medical provider. OWCP did not interfere with the claimant's right to choose an attending physician and relied on the signature in the specified medical paperwork to confirm that the aforementioned paperwork was, in fact, signed by a licensed medical provider.

7 Each claimant was required to submit a claim for worker's compensation on a periodic, usually bi-weekly, basis. To support each claim for worker's compensation, OWCP

required that the claimant obtain a medical report from the claimant's attending physician ("attending physician report") or a narrative of the claimant's medical condition on the attending physician's letterhead ("medical narrative"). OWCP provided the claimant with the partially completed attending physician report, which was then completed, signed, and forwarded to OWCP by the claimant's licensed medical provider. The information in the attending physician's report and medical narrative was relevant and material to determining the claimant's eligibility, and continued eligibility, to receive worker's compensation.

8.   A claimant who was able to resume employment was required by law to do so. As a result, OWCP authorized the claimant's employing agency ("employing agency") to periodically obtain an interim medical report on the claimant's fitness for duty from the claimant's attending physician ("interim medical report"). The employing agency provided the claimant with the partially completed interim medical report, which was then completed, signed, and forwarded to the employing agency by the claimant's licensed medical provider. The employing agency relied on the completed interim medical report to monitor the claimant's medical status and ability to return to light or full duty. The employing agency received and forwarded a copy of the interim medical report to OWCP. The information in the interim medical report was relevant and material to determining the claimant's continued eligibility to receive worker's compensation.

9.   To assist the claimant in obtaining reemployment, OWCP provided the claimant with vocational rehabilitation services. In particular, OWCP assigned a rehabilitation counselor to interview the claimant and, thereafter, identify a suitable job for the claimant. Once a suitable job was identified for the claimant, OWCP was authorized by law to reduce the claimant's worker's compensation benefits to reflect the claimant's wage-earning capacity, even if the claimant did not,

in fact, return to work. The rehabilitation counselor was authorized to obtain a report on the claimant's fitness for reemployment from the claimant's attending physician ("reemployment report"). The rehabilitation counselor provided the claimant with a blank reemployment report, which was then completed, signed, and forwarded to the rehabilitation counselor by the claimant's licensed medical provider. The rehabilitation counselor relied on the completed reemployment report to identify any physical limitations related to the claimant's capacity to regain employment. The rehabilitation counselor received and forwarded a copy of the reemployment report to OWCP. The information in the rehabilitation report was relevant and material to determining the claimant's continued eligibility to receive worker's compensation and, if eligible, the amount of benefit payments the claimant should receive.

10. Occasionally, OWCP concluded that the claimant's disability would continue for an extended period of time. As a result, the claimant was entitled to receive long term disability worker's compensation at a regular interval without having to obtain the specified medical paperwork from a licensed medical provider. Rather, as a condition of continuing to receive worker's compensation, the claimant was required by law to annually certify, among other things, the claimant's present physical condition. This certification was made on a Form 1032. OWCP mailed to each claimant a blank annual certification, which the claimant was then required to complete, sign, certify its truthfulness under penalty of law, and return to OWCP. The information in the annual certification was relevant and material to determining the claimant's continued eligibility to receive worker's compensation payments based on the specified medical reports previously submitted to OWCP.

## THE SCHEME

11. Beginning on or about March 2, 1992, and continuing to the present date, within the District of Columbia, in a matter within the jurisdiction of the Department of Labor, an agency of the United States, the defendant, SHERMAN L. BERRY, willfully and knowingly devised a scheme to falsify, conceal and cover up a material fact concerning the defendant's ability to return to suitable employment, in that, defendant SHERMAN L. BERRY, caused bogus medical reports, including sham attending physician reports, medical narratives, interim medical reports and a reemployment report, signed in the name of fictitious doctors, and made false annual certifications and other false statement to be received by the Department of Labor in support of a worker's compensation claim filed by the defendant, SHERMAN L. BERRY, when, in truth, the defendant, SHERMAN L. BERRY, received two stitches in his left toe for a work-related accident in November, 1991 and was, thereafter, not, in fact, disabled and unemployable.

## THE PURPOSE OF THE SCHEME

12. The purpose of the scheme was for the defendant, SHERMAN L. BERRY, to enrich himself by obtaining and then continuing to receive worker's compensation benefits from the United States Government by fraud.

## THE MANNER AND MEANS OF CARRYING OUT THE SCHEME

In order to further the objects and goals of said scheme, the defendant, SHERMAN L. BERRY, would and did use the following manners and means among others:

13. It was part of the scheme that from on or about March 2, 1992 through September 29, 1992, the defendant, SHERMAN L. BERRY, fraudulently received $13,541.06 in worker's compensation benefits by causing OWCP to receive the following false and fictitious paperwork:

(a) periodic worker's compensation claims based on a false representation that he was disabled and unemployable as a result from his work-related accident identified in paragraph 2 when, in truth, he was not disabled and unemployable;

(b) attending physician reports signed in the name of a fictitious doctor in support of his false representation that he was disabled and unemployable; and

(c) a medical narrative signed in the name of a fictitious doctor in support of his false representation that he was disabled and unemployable;

14. It was further part of the scheme that on or about August 31, 1992, after OWCP had questioned the defendant about a false attending physician report stating that the defendant's disability would continue for more than 90 days beginning on or about July 16, 1992, the defendant caused OWCP to receive a false attending physician report stating that the disability would not continue for more than 90 days based on an expected full recovery without any immediate complications.

15. It was part of the scheme that from on or about January 15, 1993 through on or about April 26, 1995, the defendant, SHERMAN L. BERRY, fraudulently received $37,776.41 in worker's compensation benefits by causing OWCP to receive the following false and fictitious paperwork:

(a) "a recurrence of injury" report, filed with OWCP after briefly returning to work and falsely claiming that he remained disabled and unemployable as a result of the accident identified in paragraph 2 when, in truth, he was not disabled and unemployable.

(b) periodic worker's compensation claims based on a representation that he was disabled and unemployable as a result of his work-related accident identified in paragraph 2 when, in truth, he was not disabled and unemployable;

(c) attending physician reports signed in the name of fictitious doctors in support of his false representation that he was disabled and unemployable;

(d) a medical narrative signed in the name of a fictitious doctor in support of his false representation that he was disabled and unemployable;

(e) interim medical reports signed in the name of a fictitious doctor in support of his false representation that he was disabled and unemployable; and

(f) a reemployment report signed in the name of a fictitious doctor in support of his false representation that he was disabled and unemployable;

16. It was further part of the scheme that on or about April 27, 1995, based, in substantial part, on the sham paperwork identified in paragraphs 13 through 15, the defendant, SHERMAN L. BERRY, caused OWCP to conclude that his purported disability would continue for an extended period of time. As a result, the defendant, SHERMAN L. BERRY, was entitled to receive worker's compensation at a regular interval without having to file a biweekly claim with the specified medical paperwork signed in the name of a licensed medical provider.

17. It was further part of the scheme that on or about May 5, 1994, approximately one month after OWCP had questioned the defendant about a false attending physician report concluding that the defendant may require surgery, the defendant caused OWCP to receive a false attending physician report omitting any need for surgery based on an expected full recovery without any immediate complications.

18. It was further part of the scheme that, on about the following dates, in support of his continuing worker's compensation payments identified in paragraph 16, the defendant completed and submitted to OWCP Form 1032s, which, among other things, certified that no improvement in

his medical condition had occurred:

   (a) February 28, 1996;

   (b) March 25, 1997;

   (c) April 9, 1998;

   (d) February 19, 1999;

   (e) February 25, 2000;

   (f) March 16, 2001;

   (g) April 8, 2003;

   (h) March 25, 2004; and

   (i) September 7, 2005

  19. It was further part of the scheme that on or about January 14, 2004, the defendant, SHERMAN L. BERRY, made a false statement to his rehabilitation counselor in that the defendant, SHERMAN L. BERRY informed his rehabilitation counselor that the physician treating his foot injury had died when, in truth, the treating physician was a fictitious individual who had never existed.

  20. It was further part of the scheme that, based, in part, on the sham paperwork identified in paragraphs 13 through 17, and the false statement identified in paragraph 19, OWCP paid the defendant's respective claims for worker's compensation from April 27, 1995 to February 18, 2006, thereby resulting in the fraudulent receipt of $219,041.02 by the defendant, SHERMAN L. BERRY.

  21. As a result of the above-mentioned manner and means, the defendant, SHERMAN L. BERRY, fraudulently received $270,358.49 in worker's compensation from March 2, 1992 until

February 18, 2006.

(False Statements,
in violation of Title 18, United States Code, Section 1001)

### COUNTS TWO THROUGH FOUR - WIRE FRAUD

1. Paragraphs 1 through 10 of Count One are hereby realleged and incorporated by reference as if set forth in full.

### THE SCHEME TO DEFRAUD

2. From in or about March 2, 1992, and continuing to the present date, within the District of Columbia, the defendant, SHERMAN L. BERRY, knowingly and willfully did devise and intend to devise a scheme and artifice to defraud the United States government and to obtain its money and property by means of false pretenses, representations or promises.

### PURPOSE OF THE SCHEME

3. The purpose of the scheme was for the defendant, SHERMAN L. BERRY, to enrich himself by obtaining and then by continuing to receive worker's compensation benefits from the United States Government by fraud.

### THE MANNER AND MEANS OF CARRYING OUT THE SCHEME

In order to further the objects and goals of said scheme, the defendant, SHERMAN L. BERRY, would and did use the following manners and means among others:

4. Paragraphs 13 through 21 of Count One are hereby realleged and incorporated by reference as if set forth in full.

### USE OF THE WIRES IN FURTHERANCE OF THE SCHEME

5. On or about the dates listed below, within the District of Columbia, the defendant,

SHERMAN L. BERRY, for the purpose of executing the above-described scheme and artifice to defraud, and attempting to do so, did transmit and cause to be transmitted by means of wire communications in interstate commerce, that is, between Kentucky and the District of Columbia, emails including computer-scanned documents involving the documents set forth in the following table:

| COUNT | DATE | DOCUMENT |
|---|---|---|
| TWO | March 28, 2003 | Form 1032 |
| THREE | March 25, 2004 | Form 1032 |
| FOUR | September 7, 2005 | Form 1032 |

**(Wire Fraud and Causing an Action to Be Done, in violation of Title 18, United States Code, Sections 1343 and 2)**

## COUNTS FIVE THROUGH SEVEN- FALSE STATEMENTS

1.  Paragraphs 1 through 10 and 13 through 21 of Count One are hereby realleged and incorporated by reference as if set forth in full.

2.  On or about each of the dates in the following chart, in the District of Columbia and elsewhere, the defendant, SHERMAN L. BERRY, in connection with the receipt of compensation benefits and payments under FECA in an amount in excess of $1,000, did knowingly and willfully conceal and cover up a material fact, to wit, that the defendant was not disabled and unemployable, in connection with the application of and receipt of worker's compensation by making, and causing to be made, a false and fraudulent statement that no improvement in the defendant's medical condition had occurred, thereby causing OWCP to rely on previously received bogus medical evidence purporting to show that the defendant, SHERMAN L. BERRY, was disabled and unemployable:

-10-

| COUNT | DATE | DOCUMENT |
|-------|------|----------|
| FIVE | March 28, 2003 | Form 1032 |
| SIX | March 25, 2004 | Form 1032 |
| SEVEN | September 7, 2005 | Form 1032 |

**(False Statements or Fraud to Obtain Federal Employees' Compensation, in violation of Title 18, United States Code, Section 1920)**

A TRUE BILL



FOREPERSON



ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA