UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 1:06-CR-00050 (RJL) |
| | : | |
| v. | : | |
| | : | |
| SHERMAN BERRY, | : | |
| Defendant | : | |

### GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER RULE 404(B) OF THE FEDERAL RULES OF EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully provides notice of its intent to introduce evidence at trial of acts not charged in the indictment under Rule 404(b) of the Federal Rules of Evidence.

## INTRODUCTION

1. **Background**

A grand jury has returned a seven-count indictment charging defendant with false statements, wire fraud, and false statements to obtain federal employees' compensation.  The indictment describes a scheme in which defendant regularly created and submitted false medical paperwork to the United States in order to receive a stream of payments for worker's compensation claims.

The fraud stemmed from a work-related accident on November 6, 1991, when defendant, while working as a packer in Washington, D.C. for the United States Department of Treasury, Bureau of Engraving and Printing ("BEP"), cut his toe.  He received two stitches in his toe and was advised by medical personnel to resume work eight days later.  However, defendant did not resume work after his injury, and instead filed a claim with the Office of Workers' Compensation Programs of the United States Department of Labor ("OWCP") seeking

compensation on the ground that, as a result of the above-mentioned work-related accident, he was suffering from a traumatic injury to his left toe that left him disabled and unemployable.

Defendant began receiving worker's compensation benefits on December 22, 1991. He resumed work briefly from September 25, 1992 until January 15, 1993, when defendant claimed a recurrence of the injury that occurred on November 6, 1991.[1] Defendant has received worker's compensation benefits from January 15, 1993 to the present. He has received over $275,000 from the program as a result of the claim and supporting paperwork that he filed.

While receiving worker's compensation benefits, defendant was required to submit medical paperwork supporting his claim regularly with the OWCP, including Attending Physician Reports and Duty Status Reports. From the outset of his claims, defendant committed fraud in his filings with OWCP. First, defendant invented fictitious doctors and affixed their names and forged signatures to official letterhead, falsely representing that they had been regularly treating defendant. For example, defendant created a "Dr. James Kenmore," and submitted letters bearing his name and forged signature on letterhead from Georgetown University Hospital. Not only has that hospital never employed a Dr. James Kenmore, but the District of Columbia Department of Health, the Maryland State Board of Physicians, and the Virginia Department of Health Profession all have no licensing or employment records for a James Kenmore. Defendant also submitted a letter from a "Dr. James Kent," another fictitious

---

[1] Defendant did not seek medical care at the BEP facility.

doctor he invented.[2] The various signatures for "Dr. James Kenmore" do not match and appear to be in different handwriting. Moreover, because the letters were forged, the hospital logo at the top of the letters appears slanted and faded.

On September 12, 1994, BEP terminated defendant's employment based on his fraudulent claims that he was totally disabled and unable to return to work. On April 25, 2005, OWCP, based on the sham medical paperwork defendant created and submitted, concluded that defendant's purported disability would continue indefinitely. Accordingly, defendant became entitled to receive worker's compensation at regular intervals without having to file bi-monthly claims with medical paperwork in the name of a licensed medical provider. Thereafter, between February 1996 and September 2005, defendant submitted to OWCP a series of Form 1032's, each of which falsely stated that his medical condition remained the same as described in the false medical paperwork he had created and submitted previously.

### 2.    The Toyota Credit Application

During the time in which defendant executed the scheme described above, he also made four false statements on a credit application that he signed and submitted to Toyota Financial Services ("Toyota"). The defendant completed this application on or about June 28, 2001, in connection with his attempt to purchase a 2001 Toyota Tundra.

First, in his credit application, defendant asserted that he was employed by the "Bureau Treasury Department." In fact, BEP terminated defendant's employment in 1999, and

---

[2] The letters contain numerous typographical errors and poor grammar. One of the letters from "Dr. Kenmore" describes defendant's foot as "very inflamable" and states that defendant cannot return to work "until his foot become's use to having a harder shoe." Another states that defendant is under Dr. Kenmore's "care for a crushing injury to his left foot" and that he has been diagnosed with a "crushing injury to his left foot."

defendant signed a written acknowledgment of his termination at that time.  Defendant in fact was unemployed when he filled out the Toyota application.

Second, defendant stated that his supervisor was "Daian Lomas."  This statement was doubly false.  Again, defendant was not employed and therefore had no supervisor.  Moreover, Ms. Lomas never had been defendant's supervisor.  Rather, she was an employee at BEP who happened to be defendant's girlfriend at the time he completed and submitted the credit application.

Third, defendant asserted that he owned his residence located at 1302 Darlington Street in Forrestville, Maryland.  In fact, defendant never owned this residence. Rather, his mother, Elizabeth Berry, owned that house at the time defendant submitted the credit application.

Fourth, defendant stated that his monthly income was $4,500.  This statement was false because defendant's sole monthly income consisted of worker's compensation benefits of $1,200 per month.  He did not have any other sources of income.

## DISCUSSION

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Here, the false statements in the Toyota Credit Application bear directly on defendant's intent in submitting false statements to OWCP. Thus, Rule 404(b) permits their introduction into evidence at trial. To prove the counts alleged in the indictment, the government must demonstrate beyond a reasonable doubt that defendant acted with the required elements of intent and knowledge. The false statements made by the defendant on the credit application bear directly on these elements, as they would be offered to rebut an implied or express claim of mistake or inadvertence.

Courts in this jurisdiction and others have held that where intent is at issue, the government may present other acts evidence to prove that element of the offense. For example, in United States v. DeLoach, 654 F.2d 763, 769 (D.C. Cir. 1980), where the government charged a defendant similarly with filing false statements, the government was allowed to introduce as Rule 404(b) evidence the defendant's prior swindles to prove his intent to file the charged false statements. The Court noted, "[w]here intent is the only real issue, as in this case, the government may fairly anticipate the defense of mistake and lack of knowledge and put this evidence in as part of its case in chief," because "[o]n the issue of intent, which is far harder to prove by extrinsic evidence than [defendant's] identity or the falsity of the statements, the government's need for the evidence is correspondingly greater." Id. The same reasoning applies here. To prove defendant's intent in filing false statements with OWCP, the government has a pressing need to introduce evidence of the defendant's false statements to Toyota.

Other courts have allowed the introduction of similar uncharged false statements in analogous circumstances. See, e.g., United States v. Sanders, 343 F.3d 511, 519 (5th Cir. 2003) ("[E]vidence of Sanders' failure to disclose something that was known, his working while

5

claiming worker's compensation, is related to his failure to disclose his known debt on his bank loan application, tending to prove he acted with intent and not by mistake or accident."); United States v. Jenkins, 785 F.2d 1387, 1395 (9th Cir. 1986) ("The fact that Jenkins used fraudulent means to secure conventional loans is probative on issues of intent, knowledge, good faith and absence of mistake when dealing with the FHA transactions"); United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986) ("The existence of prior similar wrongdoings reduces the plausibility of a defense of inadvertence or accident," and "misstatements in an unrelated context [are] admissible to prove fraudulent intent when the defendant claims innocent error in the situation before the court").

      WHEREFORE, the government serves notice of its intent to introduce evidence of the above events at trial.

                                Respectfully submitted,

                                JEFFREY A. TAYLOR
                                United States Attorney

              By:    /S/ ATTORNEY'S TYPED SIGNATURE
                     Glen Donath, D.C. Bar No. 460582
                     Assistant United States Attorney
                     Fraud & Public Corruption Section
                     555 Fourth Street, N.W., Room 5832
                     Washington, D.C. 20530
                     (202) 514-9555